No. 21,871.

VIOLA COBERLY, as Administratrix, etc., *Appellee,* v. THE UNITED WATER, GAS & ELECTRIC COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

ELECTRICITY—*Exposed Electric Wires—Death by Electrocution—Instructions—Negligence Proven—Proximate Cause.* The proceedings in an action by an administratrix for damages for the electrocution of her husband by coming in contact with a coil of the defendant's wire considered, and *held,* that certain instructions, framed on the conjecture that the deceased was a volunteer or an intermeddler in coming in contact with the wire, were properly refused; that the evidence was sufficient to sustain the charges of negligence pleaded; and that the evidence warranted the inference that the negligence charged was the proximate cause of the injury.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed January 11, 1919. Affirmed.

*C. M. Williams,* of Hutchinson, and *O. C. Mosman,* of Kansas City, Mo., for the appellant.

*F. L. Martin, John M. Martin,* and *Walter F. Jones,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages resulting from the death of the plaintiff's husband, who was electrocuted by coming in contact with a coil of the defendant's wire. The plaintiff recovered, and the defendant appeals.

The defendant maintained and operated a system of electric-light wires extending from Hutchinson to Nickerson and beyond. A static wire was attached to bayonets at the tops of the poles, and was grounded at each pole. Below it was a transmission wire resting on a cross arm, and below that were two more transmission wires resting on another cross arm.

The deceased had granted the defendant a right of way over his farm, inside the fence along the south side of a railroad right of way. The defendant, working eastward from Nickerson, undertook to install a second static wire about two feet beneath the lower transmission wires. The static wire was reeled off from coils carried in the rear of a wagon. One set of workmen would attach the wire to the poles with staples. Another set of workmen would make the permanent attachment, and would connect the wire with the ground wire extending from the upper static wire. This work progressed to a point on the plaintiff's farm about a quarter of a mile from his house, where it was discontinued on January 29, 1917. A considerable coil of unstrung wire was thrown on the ground at a point near and east of the foot of the last pole to which the wire was fastened by staple. The last permanent attachment was several poles farther back. The wire moved freely through the staples, to permit the slack to be taken up at the time of permanent attachment, and was not grounded. The work was left in this state of suspension until after the fatality occurred, almost two months later.

The deceased was last seen alive at about eight or eight-fifteen o'clock of the evening of March 25. His wife carried a bucket of slop to him to feed the hogs, and then returned to the house. She washed the dishes, and waited for him to come, but he did not come. She then searched about the barn, the sheds, and the corrals for him, but could not find him. She then went back to the house and waited awhile longer. Still he did not come, and she went out on the porch to look again, when she saw a light near the railroad track which she thought at first came from a train. It flashed again, and she saw it was not a train, and she went part way toward it. She could see and hear the flashes, and could smell burning clothing. She returned to the house, got her little boy, and the two went near enough to the place to see a body lying there. They then returned to the house and telephoned the neighbors. Describing the light she saw, the widow said sometimes it would flash at the ground, and then it would go up to the top of the pole where she could see it flash, a bright, brilliant light, which popped so that she could hear it at the house.

A neighbor who lived a mile away and who had been called by telephone, went down the railroad track to where the fire showed. The night was very dark, and a high wind was blowing, filling the air with dust and sand which rendered it difficult to see. After calling several times and receiving no response, he returned to the house, procured a lantern, and in company with another neighbor went to where the body lay and identified it. The body lay on the coil of wire. Other persons soon arrived, some of whom had flashlights. It was necessary to cut the wire running from the coil to the pole, and to cut the strands of the coil, in order to release the body, portions of which were burned to a cinder. The heat had been so intense that the sandy soil where the body lay had been fused into crystals. The deceased had on a pair of leather gloves, and a pair of pliers was found in his pocket. One witness said the flesh of his right hand was all burned off the bone. This witness said the point of light near the top of the pole was eight or ten feet from the pole.

A neighbor who was present when the body was released from the coil, said the wire was fastened by staple to the pole, and that with a flash light you could see that it went on to the next pole. It sagged down from three to five feet, and was probably fifteen feet above the ground. Another neighbor who was present when the body was removed said the wire went up the pole and on west. A lineman of the Nickerson telephone company, who arrived at the scene of the casualty after the body was removed, found the coil and the end of the wire which had been severed from the coil lying on the ground. The wire was sagging down some eight or ten feet between the first and second poles, but it had not been cut between the poles. This witness was still present at the scene of the casualty when some of the defendant's workmen arrived from Hutchinson. They spliced the wire some thirty or forty feet back, put it back on the pole, and deadheaded it by wrapping the end around the pole and clamping it at a point about fifteen or eighteen feet above the ground.

There was abundant evidence that the wire was harmless unless it came in contact with the high-voltage transmission wires above it.

The defendant's chief witness was the electrician at the

Nickerson substation. ' He went to the scene of the casualty with his brother, and found the body of the deceased lying on the coil. His brother cut the wire leading from the coil to the pole, and quite humanely released the body from the coil. But the witness said the first thing he looked at was where the wire had been severed some feet west of the first pole. He also said one or more of the wires of the coil were in the fingers of the dead man's right hand. Another witness for the defendant, who arrived late at the scene of the casualty, gave testimony indicating that the wire might have been cut between the poles.

The negligence charged was that the defendant left the coil lying on the ground approximately two months without deadheading or grounding the wire, and left the wire loose and sagging between the poles, so that it swayed in the wind and could easily come in contact with the high-voltage wires.

The most meritorious assignment of error relates to the refusal of the court to give certain instructions embodying the defendant's theories of how the casualty occurred. The instructions were to the effect that the plaintiff could not recover if the deceased volunteered to remedy the trouble by attempting to release the static wire from contact with the transmission wire, or if he were an intermeddler who interfered with the wire.

The instructions were properly refused. There was no evidence that the deceased did anything more than come in contact with the coil of wire. All attempts to account for his motives and conduct at the moment of the fatal contact were quite speculative, and the court was not obliged to declare rules of law to meet all the situations which speculative ingenuity might propose. Conceding, however, that the deceased was attracted to the place by flashes of light, and undertook to put an end to the abnormal exhibition, he was not a trespasser against the defendant's system. The farm belonged to him. While the defendant had a right to construct, maintain, and operate its transmission system across the farm, the defendant was not authorized to abandon incomplete construction work, dump the coil of loosely attached and ungrounded wire on the field, and leave it sagging and swaying there indefinitely. When the deceased observed the consequences of the de-

fendant's conduct, he had a right to do what any proprietor of reasonable prudence would undertake to do under the same circumstances, and the prudence of his conduct was duly submitted to the jury, under proper instructions.

The defendant argues that the deceased cut the wire between the poles, went to the coil, and was in the act of drawing the wire through the staple, when the end went up and established contact with a high-voltage wire. This conjecture was not warranted by the circumstances, and was contrary to the clear weight of the oral evidence. Concede, however, that the conjecture was well founded. The wire was safely cut, and the question of the prudence of the deceased in cutting the wire and drawing it through the staple was one for the jury, and was sufficiently covered by the instructions given to the jury.

The defendant argues that what it did and failed to do merely created a condition which did not constitute proximate cause. The duty of the defendant to take precaution was relative to the known character and manifestations of electric energy. A state of affairs which might have been tolerated over night, or over Sunday, became substantially permanent, and as to the deceased, unauthorized; and the court is of the opinion the defendant might properly have apprehended that through the operation of natural agencies danger in some form might result. In any event, the facts were not such that the court can declare they permitted no reasonable inference except want of proximate relation to the injury, and consequently the question of actionable negligence was properly submitted to the jury.

There are some other ramifications of the defendant's argument, but it is not necessary to discuss them, and the judgment of the district court is affirmed.